Filed 6/24/14 Cellphone Termination Fee Cases CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CELLPHONE TERMINATION FEE CASES. | A136818<br><br>(Alameda County<br>Super. Ct. No. RG03121510,<br>JCCP No. 4332) |

This case is part of a coordinated and ongoing consumer class action challenging the policy of wireless telephone carriers to charge early termination fees (ETF's) to customers whose service is cancelled prior to the expiration of defined contract periods. The defendant in this particular proceeding is Sprint Spectrum, L.P. (Sprint).[1] Sprint filed a petition to compel arbitration of the claims. The petition was denied and the trial court awarded plaintiffs attorney fees for their successful opposition, even though the merits of the underlying litigation had yet to be completely resolved. Plaintiffs appeal the attorney fees order to the extent it denies them the full amount of fees sought. Sprint cross-appeals, arguing, inter alia, that plaintiffs are not entitled to an award of fees at this juncture, under either Civil Code section 1717 or Code of Civil Procedure section 1021.5. We agree with Sprint that an award of fees is premature and reverse the award.

---

[1] The named plaintiffs and class representatives are Ramzy Ayyad, Amanda Selby Beck, Jeweldean Hull, Christine Morton, and Richard Samko (hereafter plaintiffs).

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

We set out the facts and procedural history of this case in some detail in *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851 (*Ayyad*) and *Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298.  We refer the reader to those opinions for a full description of the underlying facts and limit our statement here to only those matters relevant to the current issues.

A.  *Brief History of the Litigation*

This case was initially filed in July 2003 against Sprint and other providers of cellular telephone service.  The operative third consolidated amended complaint was filed as "a class action . . . by current and/or former customers of wireless telephone services."  The complaint alleged that "plaintiffs and the members of the class are individual consumers who either are or, during the period extending from four years prior to the filing of this action to the present, were subscribers to [Sprint's] wireless telephone service agreements that include an [ETF] provision . . . ."  Based on a number of statutory and common law theories, plaintiffs claimed Sprint charged them unlawful ETF's for cancelling their cellular customer service agreements prior to the expiration date specified in their contracts.  In their prayer for relief, plaintiffs sought:  (1) an order certifying the class, and appointing plaintiffs and their counsel to represent the class; (2) a permanent injunction enjoining Sprint from engaging in the alleged unfair practices; (3) compensatory damages and/or restitution; (4) imposition of a constructive trust; (5) actual damages; (6) punitive damages; (7) costs of suit; (8) prejudgment and postjudgment interest; and (9) attorney fees.

Sprint answered the complaint and asserted a number of affirmative defenses, including setoff and arbitrability.  It also filed a cross-complaint for breach of contract against plaintiffs, and it requested a return of the alleged benefits conferred by Sprint in the event the court found the ETF's unenforceable.

By order of the Judicial Council, this action and others were designated Judicial Council Coordinated Proceeding No. 4332 before a judge in the Alameda County Superior Court.  (*Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th at pp. 303 &

fn. 4, 304.)  On June 9, 2006, the trial court certified a plaintiff class consisting of: " ' "All persons who (1) had a wireless telephone personal account with [Sprint] with a California area code and a California billing address[] who (2) cancelled the account at any time from July 23, 1999, through [March 18, 2007], and (3) were charged an early termination fee in connection with that cancellation." ' " (*Id.* at p. 304.)

The class claims against Sprint and Sprint's cross-claims and setoff defense were tried in May 2008.  (See *Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th at pp. 305, 307–308.)  On the issue of damages, plaintiffs presented aggregate damages calculations for their class claims to the jury.  Similarly, Sprint presented its aggregate damages calculations for its cross-claims against plaintiffs as a class.  The trial court would then set off the two numbers.  (*Id.* at p. 304, fn. 7.)  If the net amount was " 'a positive for [p]laintiffs,' " the court would enter judgment in that amount.  If the net amount was " 'zero or a negative for the [p]laintiffs,' " the court would enter a judgment of zero in favor of plaintiffs and Sprint would not " 'be permitted to recover money from the . . . class.' " (*Ibid.*)

Plaintiffs prevailed on several statutory and common law claims.  (*Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th at p. 308.)  The jury found plaintiffs were entitled to recover $73,775,975 in damages against Sprint, but it also found plaintiffs had breached their contracts with the carrier, thus entitling Sprint to an amount of damages exceeding those plaintiffs had recovered.  The trial court determined that neither the class nor Sprint would be entitled to any monetary recovery, but also enjoined Sprint from further efforts to collect ETF's assessed during the class period.  The trial court then granted plaintiffs' motion for a new trial on Sprint's cross-claims and on the court's calculation of the setoff.  (*Id.* at pp. 307–309.)

Both plaintiffs and Sprint appealed.  (*Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th at p. 309.)  On March 3, 2011, we issued our opinion affirming the trial court "in all respects." (*Id.* at pp. 303, 330.)  In our disposition, we remanded the case to the trial court "for retrial on the issue of Sprint's damages, and the calculation of any offset to which Sprint may be entitled." (*Id.* at p. 330.)

3

After remand, Sprint moved to compel individual bilateral arbitration of the named plaintiffs' claims, relying on the then recent decision of the Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740], which held that individual contractual arbitration agreements were enforceable, even if the agreement precluded class arbitration.[2] Plaintiffs opposed the petition. The trial court denied the petition on November 14, 2011. Its principal ground for denial was that our opinion in *Cellphone Termination Fee Cases* had limited the issues on remand to retrial of Sprint's damages and calculation of any setoff to which Sprint might be entitled. (193 Cal.App.4th at p. 330.) Sprint appealed from the portions of the November 14, 2011 order denying its petition to compel arbitration. We affirmed. (*Ayyad, supra,* 210 Cal.App.4th at p. 864.)

B.      *Fee Award for Trial Court Proceedings on Sprint's Petition to Compel Arbitration*

Several months later, on August 3, 2012, plaintiffs filed a motion for attorney fees and costs for having successfully opposed Sprint's petition to compel arbitration in the trial court. They argued Sprint's petition to compel arbitration had commenced a "special proceeding" which terminated in their favor when the trial court denied the petition on November 14, 2011. After a hearing, the trial court granted plaintiffs' request for fees and costs in a written order dated September 26, 2012.

In granting plaintiffs' request, the trial court addressed a number of issues. It first determined that plaintiffs' motion was not premature. It stated: "A fee award to a prevailing party on a petition to compel arbitration is an award following completion of a special proceeding to enforce a contract. [Citation.] It is not an interim award in the action on the merits."

---

[2] Sprint styled its request for arbitration as a "motion" rather than a "petition." For the sake of clarity, however, we will follow the statutory nomenclature and refer to it as a petition in this opinion. (See *Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 521–522, fn. 4 (*Frog Creek*), citing Code Civ. Proc., §§ 1281.2, 1292.4.)

The court relied upon the reasoning of an earlier order it had entered on July 9, 2012, awarding fees against AT&T Mobility LLC in another portion of the coordinated proceeding. That order addressed "whether a petition to compel arbitration that is filed in an ongoing lawsuit is a separate proceeding for all purposes and, if only for some purposes, for what purposes." In answering that question, the trial court chose to follow the reasoning of *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40 (*Kors*), an opinion issued by Division Two of this District, which the lower court construed as "hold[ing] that a petition to compel arbitration is a separate proceeding for purposes of identifying the prevailing party and awarding fees to the prevailing party." The trial court acknowledged we had reached a contrary conclusion in *Frog Creek,* but given the conflict in the decisions of the Court of Appeal, it chose to follow what it believed to be the better rule. In its view, "the statutory scheme strongly suggests that petitions to compel arbitration are analytically distinct special proceedings that are nestled within actions, but not subsumed by the actions." The trial court opined that *Kors* was more persuasive than *Frog Creek* because, in the lower court's view, *Frog Creek* improperly focused its analysis on Civil Code section 1717, a statute of general application, while failing to give adequate consideration to the specific statutory scheme regarding petitions to compel arbitration.

The trial court also noted that the motion for fees "was filed beyond the time limits" but found good cause to extend time for hearing the matter under California Rules of Court, rule 3.1702(d).[3] In reaching that conclusion, the court explained: "The analysis of statutes and rules in *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454,

---

[3] "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . . ." (Cal. Rules of Court, rule 3.1702(b)(1).) Subject to certain exceptions, a notice of appeal must normally be filed within the earlier date of 180 days after entry of judgment, or 60 days after service of a notice of entry of judgment or a file-stamped copy of the judgment. (Cal. Rules of Court, rule 8.104(a)(1).)

5

466, is inapplicable to this case because *Carpenter* concerned prejudgment appealable orders whereas in this case the orders on . . . petitions to compel arbitration are final judgments in special proceedings. The court has considered *Green v. Mt. Diablo Hospital Dist.* (1989) 207 Cal.App.3d 63, which holds (consistent with *Frog Creek*) that a motion for fees must be deferred until the conclusion of the action as a whole and finds it distinguishable because it presumes (contrary to *Kors*) that the petition is subsumed in the action and fails to address the separate nature of a special proceeding. [¶] The court may, however, extend the time for filing a motion for attorneys' fees. ([Cal. Rules of Court, rule] 3.1702(d).) 'Rule 3.1702(d) is "remedial" and is to be given a liberal, rather than strict interpretation.' (*Lewow v. Surfside III Condominium Owners*[] *Assn., Inc.* [(2012)] 203 Cal.App.4th 128, 135.) This case is similar to *Lewow* in that there is a 'complex and debatable' legal issue concerning when a motion for fees can be filed. . . . The court finds on the facts of this case that [p]laintiffs have demonstrated good cause for delaying their motion for attorney[] fees." (Fn. omitted.)

The trial court awarded fees under both Civil Code section 1717 and Code of Civil Procedure section 1021.5. With regard to the latter statute, the court noted: "At the time the Ayyad [p]laintiffs opposed Sprint's petition to compel arbitration they were acting [on] behalf of the members of a certified class that had prevailed both at trial and in the Court of Appeal on the class claims. (*Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th 298.) Sprint's cross-claims against the class have yet to be re-tried, so the court expressly does not hold that the class has 'prevailed' on the merits of the action as a whole." It nevertheless rejected Sprint's argument that fees were unavailable under Code of Civil Procedure section 1021.5 because, Sprint asserted, that statute permits awards only to a "successful party" in an "action." (Code Civ. Proc., § 1021.5 ["a court may award attorneys' fees to a successful party against one or more opposing parties in any *action* which has resulted in the enforcement of an important right affecting the public interest . . . ." (italics added)].) The trial court concluded Code of Civil Procedure section 1021.5 applies to special proceedings, and plaintiffs had prevailed in a such a special proceeding by successfully opposing Sprint's petition to compel arbitration. It

6

reasoned: "[Code of Civil Procedure section] 1021.5 is designed to provide fees for public interest advocacy, and excluding special proceedings from [Code of Civil Procedure section] 1021.5 would be contrary to the apparent legislative intent. (*Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312, 1319–1320 ['In deciding what constitutes an "action" within the meaning of [Code of Civil Procedure] section 1021.5, we must look to the purpose of the section. . . . Its purpose is to encourage suits effectuating a strong public policy by awarding fees to persons who through lawsuits successfully bring about the benefits of such policies to a broad class of citizens.']; *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1460 ['[R]espondents do not argue, nor would it be reasonable to argue, that the court could not award attorney's fees for the mandamus proceeding. . . . In short, the use of the term "action" does not in all contexts refer to the technical meaning of the term as defined in the Code of Civil Procedure.'].)"

The trial court found that the statutory requirements of Code of Civil Procedure had been met. It wrote: "Sprint's petition to compel arbitration concerned 'an important right affecting the public interest' within the meaning of [Code of Civil Procedure section] 1021.5. The California Supreme Court has held that class actions serve a public purpose in 'deterring and redressing wrongdoing.' . . . Although the compensation function of [a] class action is private in nature, the deterrence aspect serves a public purpose. [¶] [Plaintiffs] did confer a 'benefit' on 'a large class of persons.' The certified Sprint ETF class has almost two million members. . . . [¶] [Plaintiffs] conferred a 'significant benefit' on the members of the certified class when they successfully opposed Sprint's petition to compel arbitration. The benefit was significant because it preserved the rights of the absent class members to participate in a class action with a jury trial and relieved them of the obligation to initiate individual arbitration proceedings. Procedural benefits can be 'substantial benefits.' . . . [¶] . . . [¶] The necessity and financial burden of private enforcement by [plaintiffs] makes an award appropriate. The amount of money for each plaintiff was relatively small, so it would not have made financial sense for any one plaintiff to have challenged Sprint's petition to arbitrate. There was, and could be, no

7

monetary recovery from opposing a petition to compel arbitration, so fees could not be paid out of any recovery in the special proceeding." (Fn. omitted.)

The trial court found, however, that 369 hours plaintiffs' counsel expended opposing Sprint's motion were not reasonable. It concluded: "The court finds that [p]laintiffs' counsel . . . reasonably expended 240 hours (6 person weeks) in opposing Sprint's petition to compel arbitration. The court finds that [p]laintiffs' counsel reasonably expended 60 hours in making the fee motion. The court follows the methodology in its prior orders regarding fees . . . and determines that an aggregate rate of $500 per hour is reasonable. This results in a lodestar of $120,000 for opposing the petition and $30,000 for filing the fee application. [¶] Regarding a multiplier, counsel pursued the case on a contingent basis, so counsel are entitled to a 0.3 multiplier for opposing the petition to compel arbitration. In addition, the arbitration issues in the evolving post-*Concepcion* legal landscape were more complex and challenging than typical complex litigation, which warrants a 0.2 multiplier."

The trial court noted that it "ha[d] considered the issue of whether a fee award of $180,000 for prevailing on a petition to compel arbitration is out of proportion to the benefit obtained given that the merits of the action were not reached. The court finds the award appropriate under the circumstances. . . . Specifically, counsel preserved the right to pursue the judgment of 12/24/08 (subject to offset from Sprint's counter-claims)." Accordingly, the court awarded plaintiffs $210,000 in attorney fees. Both plaintiffs and Sprint appeal from the September 26, 2012 order.[4]

---

[4] An order requiring payment of attorney fees "is appealable as a final determination of a collateral matter distinct and severable from the general subject of the litigation." (*Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 830, fn. 4; *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 900 & fn. 18; *Lachkar v. Lachkar* (1986) 182 Cal.App.3d 641, 645, fn. 1.) On April 2, 2013, the trial court awarded plaintiffs additional fees for the appellate proceedings in *Ayyad*. Sprint's appeal from that order is before the court in appeal No. A138424.

## II.    DISCUSSION

Plaintiffs argue that the trial court erred to the extent it denied them the full amount of fees sought.  In its cross-appeal, Sprint also raises numerous attacks on the trial court's attorney fee order.  Sprint first argues that plaintiffs are not entitled to any award of attorney fees, under either Civil Code section 1717 or Code of Civil Procedure section 1021.5, before the merits of the parties' claims are completely resolved.  Next, Sprint contends that the trial court abused its discretion in finding good cause to consider plaintiffs' untimely motion.  It also contends that, even if plaintiffs' motion for fees is not premature, additional statutory requirements are unmet.  Finally, Sprint maintains that the amount of fees awarded was excessive.  We need only reach Sprint's first argument. Because the trial court erred in finding plaintiffs' motion for fees was not premature, the order must be reversed.

The trial court's determination of the legal basis for an attorney fee award is a question of law we review de novo.  (*Frog Creek, supra,* 206 Cal.App.4th at p. 523.)

A.    *Civil Code Section 1717* and Frog Creek

In *Frog Creek , supra,* 206 Cal.App.4th 515, we reversed an award of attorney fees to a party that, like plaintiffs here, had successfully opposed a petition to compel arbitration filed in a pending contract action.  (*Id.* at pp. 520, 523.)  Frog Creek Partners, LLC (Frog Creek) sued Vance Brown, Inc. (Brown) for breach of contract, conversion, and other causes of action.  Brown filed a petition to compel arbitration in the pending lawsuit, based on an arbitration clause contained in the underlying contract.  (*Id.* at pp. 520–521.)  The trial court initially denied the petition when Brown was unable to produce a complete version of the contract with an arbitration provision.  (*Id.* at pp. 521–522.)  However, Brown renewed its petition based on another version of the contract, which was agreed to be controlling.  (*Id.* at p. 522.)  The trial court denied the petition, but we reversed and ordered arbitration.  (*Ibid.*)

Brown ultimately prevailed in the arbitration and was awarded damages, as well as attorney fees for the arbitration proceeding.  However, the arbitrators declined to rule on the parties' entitlement to attorney fees in connection with the proceedings predating the

9

arbitration. (*Frog Creek, supra,* 206 Cal.App.4th at p. 522.) Both parties filed motions in the trial court, under Civil Code section 1717, seeking prearbitration attorney fees. Frog Creek sought only the fees it had incurred in defeating the initial petition to compel arbitration. (*Id.* at p. 523.) The trial court determined Brown was the prevailing party in the arbitration and awarded it both prearbitration and postarbitration attorney fees. The trial court also awarded Frog Creek $125,000 in fees for the initial petition to compel arbitration, determining that Frog Creek was the prevailing party therein. (*Ibid.*)

After analyzing the language and legislative history of Civil Code section 1717 as well as the case law related to attorney fee awards in disputes over arbitrability, we held that, under Civil Code section 1717, "there may only be one prevailing party entitled to attorney fees on a given contract in a given lawsuit." (*Frog Creek, supra,* 206 Cal.App.4th at pp. 520, 524–538, 547–548, fns. omitted.) First, we noted that Civil Code section 1717 authorizes an award of attorney fees " '[i]n any action on a contract' to . . . 'the party who recovered a greater relief *in the action on the contract*.' " (*Frog Creek,* at pp. 523–524, italics added.) We rejected Frog Creek's contention that the initial petition to compel arbitration was a distinct " 'action on a contract.' " (*Id.* at p. 524.) We explained: " 'Action' is defined in Code of Civil Procedure section 22, which provides: 'An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'[5] That definition of 'action' has been applied to various statutory schemes. [Citations.] It appears that courts generally treat the term 'action,' as defined by Code of Civil Procedure section 22, as referring to the whole of a lawsuit rather than to discrete proceedings within a lawsuit. . . . Code of Civil Procedure section 22, therefore, does not support Frog Creek's argument that [the] petition to compel was an 'action on the

---

5 A "special proceeding" includes "[e]very other remedy." (Code Civ. Proc., § 23.)

10

contract' independent of the other contract claims in the lawsuit." (*Frog Creek,* at p. 527, fn. 6.)

We also reviewed and explained the case law that "confirm[s] that attorney fees should be awarded to the party who prevails on a petition to compel arbitration only when the resolution of that petition terminates the entire 'action on the contract.' " (*Frog Creek, supra,* 206 Cal.App.4th at p. 531.) We expressly disagreed with the reasoning in *Kors, supra,* 195 Cal.App.4th 40, in which Division Two of this court held that a defendant who had prevailed on her petition to compel arbitration was entitled to an immediate award of attorney fees, pursuant to Civil Code section 1717, without waiting for resolution of the merits of the dispute. (*Frog Creek,* at pp. 525, 536.) Specifically, we rejected *Kors*'s implication "that a petition to compel arbitration filed in a pending lawsuit constitutes a 'discrete action' providing a basis for a [Civil Code] section 1717 attorney fee award, even though that could result in multiple prevailing parties on one contract in a given lawsuit." (*Frog Creek,* at p. 537.) We concluded neither the legislative history of the statute nor case law supported such an interpretation.[6] (*Ibid.*)

We recognized that petitions to compel arbitration are essentially suits in equity to compel specific performance of a contract and are analytically distinct from the merits of underlying litigation. But, we found this insufficient "to justify treating a petition to compel arbitration filed in a pending lawsuit as a distinct action on the contract under Civil Code section 1717." (*Frog Creek, supra,* 206 Cal.App.4th at p. 537.) We

---

[6] We also rejected *Kors*'s reliance on *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796 (*Otay*) and *Turner v. Schultz* (2009) 175 Cal.App.4th 974 (*Turner*) to support "the proposition that Kors could obtain a fee award for prevailing on the petition to compel arbitration." (*Frog Creek, supra,* 206 Cal.App.4th at p. 536.) We explained: "[I]t was critical in [*Otay* and *Turner*] that the decisions on arbitrability occurred in the context of wholly independent legal proceedings that resolved 'the only issue before the court—whether the arbitration should be allowed to proceed.' (*Turner, supra,* 175 Cal.App.4th at p. 983; see also *Otay, supra,* 158 Cal.App.4th at p. 807.) In contrast, the petition to compel arbitration in *Kors* was filed within the lawsuit brought by BWM, and, like Frog Creek's victory, Kors's victory on the arbitration petition did not resolve the underlying suit. (*Kors*, at p. 50.)" (*Frog Creek, supra,* 206 Cal.App.4th at p. 536.)

11

explained that the Legislature could have expressly authorized fee awards on such petitions, as it had for special motions to strike under Code of Civil Procedure section 425.16, but had not done so. (*Id.* at pp. 537–538.)

Finally, we rejected the rationale, espoused in *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, that specific contract language could justify a separate and interim attorney fee award. (*Frog Creek, supra,* 206 Cal.App.4th at pp. 525, 544–546.) We explained: "*Acosta*'s rationale appears to be contrary to the proposition that Civil Code section 1717 alone determines a party's entitlement to attorney fees under a contractual fee provision." (*Id.* at p. 544, citing *Santisas v. Goodin* (1998) 17 Cal.4th 599, 616.)

Ultimately, we reversed the award to Frog Creek and explained: "[T]he trial court erred in awarding Frog Creek attorney fees under Civil Code section 1717 for prevailing on the first petition to compel arbitration because Brown prevailed on the contract action overall; the Legislature did not intend to authorize multiple attorney fees awards to multiple prevailing parties on a single contract in a given lawsuit." (*Frog Creek, supra,* 206 Cal.App.4th at p. 546.)

 1. *Application of* Frog Creek

Sprint contends that petitions to compel arbitration, filed in ongoing lawsuits, are no different from other motions and that interim fee awards for opposing such petitions are not permissible. We agree. (*Frog Creek, supra,* 206 Cal.App.4th at p. 535 ["defeating a petition to compel arbitration filed in a pending action does not justify a grant of fees under Civil Code section 1717 where the merits of the contract claims remain pending in that action"].) As our colleagues in Division Three recently put it, in considering the application of res judicata, "[a] petition to compel arbitration filed in a pending lawsuit is 'part of the underlying action'; it is *not* a distinct action." (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 772.) Instead, "[plaintiffs'] lawsuit was the action on the contract for purposes of Civil Code section 1717; [Sprint's] . . . petition to compel arbitration was a contract-based claim within the larger action and [plaintiffs'] victory [on the petition] was not a basis for a fee award under Civil Code section 1717." (*Frog Creek,* at p. 541.)

12

Here, Sprint's petition to compel arbitration was filed as part of an ongoing lawsuit. And, although Sprint's petition to compel arbitration has been decided, the underlying action of which the petition is a part has not reached its conclusion. As the trial court itself recognized, Sprint's cross-claims against the class have yet to be retried, and the court has yet to determine how those amounts will be set off. Indeed, the trial court itself said that it "*expressly* [*did*] *not hold* that the class has 'prevailed' on the merits of the action as a whole." (Italics added.) Therefore, at this point we cannot predict which party will "recover[] a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).) And since under Civil Code section 1717 there may be only one prevailing party in the action (*Frog Creek, supra,* 206 Cal.App.4th at pp. 531, 539), an award of attorney fees under that statute is simply premature. It necessarily follows that at this stage of the litigation, plaintiffs are not yet entitled to fees under Civil Code section 1717 despite their success in opposing Sprint's request for arbitration.

2.      *We Decline to Reconsider* Frog Creek.

Plaintiffs contend that because of the conflict between *Kors* and *Frog Creek,* the trial court was entitled to choose the decision it found more persuasive. They are correct. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456 [where decisions of appellate courts are in conflict, "the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions"].) However, "[r]espect for our colleagues and the orderly administration of justice . . . dictate that there be a compelling reason before we overrule a decision of another panel of this court." (*Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1203–1204.) Plaintiffs have identified no compelling reason to reconsider the rule we enunciated in *Frog Creek*.

Plaintiffs merely rehash the same arguments and precedent we discussed and rejected in *Frog Creek*. For example, plaintiffs contend that "[t]he California statutory provisions that provide for arbitration also support the trial court's conclusion that fees could be awarded prior to the entry [of] judgment on the merits at the end of the underlying litigation." However, in *Frog Creek,* we specifically acknowledged the statutory scheme. (*Frog Creek, supra,* 206 Cal.App.4th at pp. 532, 537.) We said: "[A

13

Code of Civil Procedure] section 1281.2 petition may be filed independently, in which case it commences an independent lawsuit to enforce the agreement to arbitrate. [Citations.] . . . However, where, as in the present case, there is an existing lawsuit involving the same underlying contractual dispute, the petition to compel arbitration *must*, under [Code of Civil Procedure] section 1292.4, be filed within the existing suit." (*Frog Creek,* at p. 532.)  We also recognized that "were it not for the existence of an ongoing action, the party seeking to enforce an agreement to arbitrate would have been able to file an independent petition to compel arbitration under [Code of Civil Procedure] section 1281.2, which would have been a discrete action under *Otay* and *Turner*." (*Frog Creek,* at p. 537.)  But we went on to conclude that "those distinctions are [in]sufficient to justify treating a petition to compel arbitration filed in a pending lawsuit as a distinct action on the contract under Civil Code section 1717." (*Frog Creek*, at p. 537.)

Nor do plaintiffs rely on any new authority that calls into question our extended analysis in *Frog Creek.*  In fact, both recent and older authority is consistent with *Frog Creek*.  (See *Roberts v. Packard, Packard & Johnson, supra*, 217 Cal.App.4th at pp. 838–843 [reversing fee award to party that prevailed on petition to compel arbitration filed in contract action; prevailing party determination under Civ. Code, § 1717 had to await resolution of contract causes of action]; *Phillips v. Sprint PCS, supra,* 209 Cal.App.4th at pp. 772–773; *Green v. Mt. Diablo Hospital Dist., supra,* 207 Cal.App.3d at p. 76 [trial court properly denied Civ. Code, § 1717 attorney fee request where "there ha[d] been no final determination of the rights of the parties"]; see *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 ["prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions' "].)  "Procedural steps taken during pending litigation are not an 'action' within the meaning of [Civil Code] section 1717."

14

(*Roberts v. Packard, Packard & Johnson,* at p. 832.)  The prevailing party determination must therefore await resolution of the merits of the parties' claims.[7]

We decline plaintiffs' invitation "to consider the authorities supporting [their] view afresh and hold that [plaintiffs'] arbitration fees are awardable before a final judgment on the merits."  Because Sprint's petition to compel arbitration was filed within an ongoing lawsuit and contract claims remains unresolved, we must reverse the trial court's award of fees under Civil Code section 1717.

3.    *Language of Attorney Fee Provision Does Not Trump the Statutory Scheme.*

Plaintiffs also argue that under the language of the attorney fee provision at issue here, "fees are specifically awardable for compelling arbitration no matter what the outcome on the merits."[8]  (Fn. omitted.)  Thus, plaintiffs claim, there was no reason for the trial court to wait for final judgment before awarding fees.  As explained above, we previously rejected the proposition that specific contractual language could justify a separate fee award under Civil Code section 1717, because that would undermine the Legislature's intent to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions.  (*Frog Creek, supra,* 206 Cal.App.4th at

---

[7] The only "new" authority plaintiffs cite is *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790.  Plaintiffs pick various quotes from this case and claim they stand for the proposition "that arbitration even within existing litigation is a separate proceeding."  They do not.  (See *id.* at p. 1799, fn. 7 [requirement that petition to compel arbitration be filed in an action pending in superior court "does not mean . . . that the arbitration is a subsidiary proceeding which necessarily falls with the paramount legal action[,]" since petition to compel arbitration may be filed even in absence of existing legal action]; *id.* at pp. 1805–1806 [trial court has no power to dismiss contractual arbitration proceeding because such a proceeding is grounded in contract, not in action at law].)

[8] Plaintiffs rely on a reciprocal interpretation of the arbitration clause in Sprint's contracts, which provides:  "If any party files a judicial or administrative action asserting a claim that is subject to arbitration and another party successfully stays such action or compels arbitration, the party filing that action must pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including attorney's fees."

15

pp. 544–546.)  Plaintiffs offer us no reason to revisit our decision in *Frog Creek* on this point.

B.     *Code of Civil Procedure Section 1021.5*

Plaintiffs point out that *Frog Creek* did not address fee awards made under Code of Civil Procedure section 1021.5 and suggest we uphold the award on that basis.  We cannot.

"A threshold requirement for a fee award under Code of Civil Procedure section 1021.5 is the party seeking fees must be 'a successful party against one or more opposing parties in any action.'  [Citations.]"  (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648.)  We must take a "broad, pragmatic view of what constitutes a 'successful party.' "  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565.)  However, " 'successful' " is synonymous with " 'prevailing.' "  (*Id.* at pp. 570–571.)  The trial court concluded plaintiffs were the prevailing parties in what it called a special proceeding, and it awarded fees based on plaintiffs' success in that distinct proceeding.  But since we have held that Sprint's petition to compel arbitration did not commence a distinct proceeding—special or otherwise—the trial court could not award fees on that ground.

Plaintiffs' reliance on *MBNA America Bank, N.A. v. Gorman* (2006) 147 Cal.App.4th Supp. 1 (*Gorman*)—a nonbinding opinion from the superior court appellate division—does not convince us to reach a contrary conclusion.  In that case MBNA America Bank (MBNA) obtained an arbitration award against Gorman.  When MBNA filed a petition to confirm the arbitration award, the trial court denied it on the grounds that the arbitration provision was unenforceable.  (*Id.* at p. 5.)  Thereafter, Gorman was awarded his attorney fees.  (*Id.* at pp. 5–6.)  On appeal, MBNA argued that the trial court erred in determining that Gorman was the prevailing party, under Civil Code section 1717, because there had been no final determination of the contractual rights giving rise to the dispute.  (*Id.* at p. 6.)  In determining that Gorman was a "prevailing party" for purposes of Civil Code section 1717, the reviewing court observed: "Here, the petition proceeding initiated by [MBNA] was to enforce an award obtained

16

pursuant to a mandatory arbitration provision in the parties' contract. The arbitration provision was a term of the contract, and thus, the petition proceeding was an attempt to enforce a term of the contract. . . . [¶] . . . [MBNA]'s litigation objectives were set forth in its petition to confirm the arbitration award. Therein, [MBNA] attached a copy of the arbitration agreement and the notice of arbitration claim, and argued that the agreement was enforceable and therefore, the award should be confirmed. By declaring the agreement unenforceable in California, the trial court thwarted [MBNA's] litigation objectives in initiating this judicial proceeding." (*Id.* at pp. 7–8.)

*Gorman, supra,* 147 Cal.App.4th Supp. 1 simply did not address whether a petition to compel arbitration, filed in an ongoing lawsuit, is a distinct action for purposes of Code of Civil Procedure section 1021.5. (*Gorman*, at p. 9.) Opinions are not authority for propositions not considered. (*People v. Avila* (2006) 38 Cal.4th 491, 566.)

Nor can we uphold the trial court's order as an interim award under Code of Civil Procedure section 1021.5. Plaintiffs contend: "Under *Bowman* [*v. City of Berkeley* (2005) 131 Cal.App.4th 173] and many other cases applying [Code of Civil Procedure] section 1021.5, there can be no question that fee awards may be made to parties who brought about interim decisions, decisions on preliminary issues, or decisions even if the case was settled before trial. [Citation.] To qualify for [Code of Civil Procedure] section 1021.5 fees, [p]laintiffs need not show that they obtained a final judgment or money damages against [Sprint]—only that their efforts served to vindicate an important right. [Citations.]"

Plaintiffs are correct that " 'an attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment.' [Citations.]" (*Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 565; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290.) And, it is recognized that Code of Civil Procedure section 1021.5 fees may be awarded on an interim basis after the moving party has obtained some of its objectives *on the merits*. (See *Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1080, 1086; *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 271; *Bartling v. Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97, 101–102.)

17

However, none of these cases suggest that a party is entitled to an award of fees for every procedural victory along the way.

In *Maria P. v. Riles, supra,* 43 Cal.3d at page 1286, the plaintiffs sued to prevent a school district from reporting students' immigration status as required by a state statute. They obtained a preliminary injunction to stop enforcement of the statute, but later dismissed their case after their claims were mooted by repeal of the statute at issue. (*Id.* at pp. 1288, 1290–1291.) The trial court awarded plaintiffs the reasonable attorney fees incurred in obtaining the preliminary injunction. (*Id.* at pp. 1285–1286.) Our Supreme Court observed that the plaintiffs were "successful part[ies]," under Code of Civil Procedure section 1021.5, even though their action did not result in a favorable final judgment. (*Maria P. v. Riles,* at pp. 1290–1291.) The court noted: "[A Code of Civil Procedure] section 1021.5 award is not necessarily barred merely because the plaintiff won the case on a preliminary issue. [Citation.] In determining whether a plaintiff is a successful party for purposes of [Code of Civil Procedure] section 1021.5, '[t]he critical fact is the impact of the action, not the manner of its resolution.' [Citation.]" (*Maria P. v. Riles,* at p. 1291.) Because plaintiffs obtained their litigation objective by "stop[ping] enforcement of [the challenged statute] statewide for almost three years," the trial court did not err in awarding fees. (*Ibid.*) The court explained: " ' "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation *which achieves some of the benefit the parties sought in bringing suit*." ' [Citation.]" (*Id.* at p. 1292, italics added.)

In *Bowman v. City of Berkeley, supra,* 131 Cal.App.4th 173, the plaintiffs (Neighbors) filed a petition for writ of mandate challenging the City of Berkeley's approval of a housing project. They prevailed on only one of their six causes of action— in which they had alleged they did not receive a fair hearing at the council meeting where the project was approved. The Neighbors obtained an order for a new hearing, at which the project was ultimately approved again. (*Id.* at pp. 176–177.) The reviewing court affirmed the trial court's award of fees "despite the subsequent failure of their other causes of action." (*Id.* at p. 179.) The court emphasized that the Neighbors had obtained

18

some of the relief they sought in their petition for writ of mandate. It observed: "The City asserts that 'the only relief [the Neighbors] did obtain—new hearing—[w]as not even requested in their prayer' of the petition. But while it is true that the Neighbors' prayer did not specifically mention a new hearing, it did expressly request that the May 28, 2002 project approval be set aside. That approval was rescinded pursuant to the court order that returned the matter to the City for a new hearing. Thus, it is incorrect to say that the Neighbors obtained none of the relief they sought." (*Id.* at p. 177.)

These cases instruct that attorney fees may be awarded to a plaintiff who, despite the absence of a final judgment in his or her favor, succeeds in achieving at least one of his or her litigation objectives. But, "it is the objective of the *lawsuit* that is critical to recovering fees under [Code of Civil Procedure] section 1021.5, not the success of an ancillary part of the action. By its terms, [Code of Civil Procedure] section 1021.5 authorizes attorney fees if the *action* results in the enforcement of an important public right affecting the public interest. Likewise, the purpose of [Code of Civil Procedure] section 1021.5's authorization of a fee award is to give private citizens an incentive to bring *lawsuits* enforcing important public rights. [Citations.] To be sure, an individual may fulfill his or her role as a private attorney general in a variety of ways . . . . In all cases, however, whether a party has been successful is measured by the resolution of the *action*, not an ancillary part of the litigation. [Citations.]" (*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 402; accord, *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 603 [newspaper's success on motion to unseal did not entitle it to fees because success was ancillary to objective of underlying lawsuit].)

Here, in contrast to both *Bowman* and *Maria P.*, the trial court awarded fees for plaintiffs' success on a matter unrelated to the merits of the lawsuit. Neither the trial court nor plaintiffs seek to support the award on the ground that plaintiffs prevailed *on the merits* in the underlying litigation—by obtaining injunctive relief and the December 2008 judgment (subject to offset). (*Ayyad, supra,* 210 Cal.App.4th at pp. 860–861;

19

*Cellphone Termination Fee Cases, supra,* 193 Cal.App.4th at p. 308.)[9]  The trial court not only clearly declined to exercise its discretion to make an interim award of fees on the merits, it stated plainly that such an award would not be appropriate under the then present circumstances of the case.  Plaintiffs have not appealed that portion of the order.  And, we have not even been asked to affirm the order before us on that basis.   (Cf. *Coalition for L.A. County Planning etc. Interest v. Board of Supervisors* (1977) 76 Cal.App.3d 241, 246 [plaintiffs argued attorney fee award was proper under theories rejected by trial court].)

The trial court erred in granting fees under Code of Civil Procedure section 1021.5.  Because we hold that plaintiffs were not entitled to an award of attorney fees under either Civil Code section 1717 or Code of Civil Procedure section 1021.5, we need not reach the remaining arguments raised on Sprint's cross-appeal or plaintiffs' appeal.

## III.   DISPOSITION

The order from which the appeals are taken is reversed.  Sprint shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Bruiniers, J.

We concur:

_____
Jones, P. J.

_____
Needham, J.

---

[9] Plaintiffs have asked us to take judicial notice of the August 2013 special verdict rendered in the retrial of Sprint's cross-complaint.  We deny plaintiffs' request for judicial notice because the outcome of the retrial on Sprint's cross-complaint is irrelevant to our decision.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1 [material to be judicially noticed must be relevant].)